# EXHIBIT B

## UNFERTH DECLARATION

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ELK PETROLEUM, INC., *et al.*, | Case No. 19-11157 (LSS) |
| Debtors.[1] | Jointly Administered |

**DECLARATION OF MARK UNFERTH IN SUPPORT OF THE APPLICATION OF THE OFFICIAL COMMITTEE OF PREFERRED EQUITY SECURITY HOLDERS PURSUANT TO 11 U.S.C. §§ 328(a), 504, AND 1103(a); FED. R. BANKR. P. 2014 AND 2016; AND DEL. BANKR. L.R. 2014-1 AND 2016-1 FOR AN ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF MORRIS, NICHOLS, ARSHT & TUNNELL LLP AS COUNSEL FOR THE OFFICIAL COMMITTEE OF PREFERRED EQUITY SECURITY HOLDERS *NUNC PRO TUNC* TO JUNE 19, 2019**

I, Mark Unferth make this declaration under 28 U.S.C. § 1746, and state the following:

1. I am a Portfolio Manager with ACR Alpine Capital Research, LLC, which serves as advisor to the ACR Multi-Strategy Quality Return Fund, a Series of Investment Management Series Trust II, a Delaware statutory trust ("ACR"). ACR is a member and chair ("Chair") of the Official Committee of Preferred Equity Security Holders (the "Committee") of Elk Petroleum, Inc. ("EPI") appointed in the above-captioned chapter 11 cases (the "chapter 11 cases") of EPI and its affiliated debtors (collectively, the "Debtors"). I and my ACR colleague, Ryan Linkul, serve as ACR's representatives on the Committee. In such capacity, I was part of the process involved in selecting and engaging counsel for the Committee.

2. I am competent to make this declaration. I have reviewed and I am familiar with the *Application of the Official Committee of Preferred Equity Security Holders Pursuant to 11*

[1] The Debtors are the following four entries (the last four digits of their respective taxpayer identifications numbers (if required) follow in parentheses): Elk Petroleum, Inc. (8606); Elk Petroleum Aneth, LLC (4449); Resolute Aneth, LLC (0729); and Elk Operating Services, LLC (3197). The address of the Debtors is 1700 Lincoln, Suite 2250, Denver, Colorado 80203

*U.S.C. §§ 328(a), 504, and 1103(a); Fed. R. Bankr. P. 2014 and 2016; and Del. Bankr. L.R. 2014-1 and 2016-1 for an Order Authorizing Retention and Employment of Morris, Nichols, Arsht & Tunnell LLP as Counsel for the Official Committee of Preferred Equity Security Holders Nunc Pro Tunc to June 19, 2019* ("Application"). In support of this Application, the Committee relies upon the Werkheiser Declaration, which is attached to the Application as **Exhibit A**. Except as otherwise noted, all facts in this declaration are based on my personal knowledge of the matters set forth herein, information gathered from my review of relevant documents, and information supplied to me by other members of the Committee.

3. I understand that this declaration is provided pursuant to ¶ D.2 of the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger chapter 11 cases* (the "Guidelines"), which were adopted by the Executive Office for United States Trustees under 28 U.S.C. § 586(a)(3). I am informed by counsel that the Guidelines request that any application for employment of an attorney under 11 U.S.C. §§ 327 or 1103 in certain larger cases be accompanied by a verified statement from the client that addresses the following:

(a) The identity and position of the person making the verification.

(b) The steps taken by the client to ensure that the applicant's billing rates and material terms for the engagement are comparable to the applicant's billing rates and terms for other non-bankruptcy engagements and to the billing rates and terms of other comparably skilled professionals.

(c) The number of firms the client interviewed.

(d) If the billing rates are not comparable to the applicant's billing rates for other non-bankruptcy engagements and to the billing rates of other comparably skilled professionals, the circumstances warranting the retention of that firm.

(e) The procedures the client has established to supervise the applicant's fees and expenses and to manage costs. If the procedures for the budgeting, review and approval of fees and expenses differ from those the client

> regularly employs in nonbankruptcy cases to supervise outside counsel, explain how and why. In addition, describe any efforts to negotiate rates, including rates for routine matters, or in the alternative to delegate such matters to less expensive counsel.

4. I have been further informed by counsel that the United States Trustee for the District of Delaware (the "U.S. Trustee") has requested that the Guidelines be observed.

**A. Identity of the Declarant**

5. On June 19, 2019, the U.S. Trustee appointed the Committee to represent the interests of the preferred equity security holders of EPI in these chapter 11 cases pursuant to section 1102(a)(1) of the Bankruptcy Code and filed the *Notice of Appointment of Committee of Preferred Equity Security Holders* (D.I. 164) giving parties in interest notice of the appointment of the Committee. The members appointed to the Committee are: (i) LIM Asia Special Situations Master Fund Limited ("LIM"); (ii) Fulcrum Energy Capital Fund 11, LLC ("Fulcrum"); and (iii) ACR.

6. As set forth above, I am one of ACR's representatives on the Committee.

**B. Steps Taken to Ensure Comparability of Engagement Terms**

7. I have confirmed with Morris Nichols that, while Morris Nichols' billing rates vary from attorney to attorney based on such factors as the individual attorney's rank (*e.g.*, partner, counsel, associate), years of experience and the demand for services in the attorney's particular area of expertise, their billing rates do not vary as a function of whether the services performed relate to a bankruptcy engagement or a non-bankruptcy engagement.

8. I have also been informed by Morris Nichols that its standard hourly rates are set annually by reference to various annual market surveys, rates at comparable firms and market data. Based on this and other sources, including reviews of contemporaneous time records and fee applications filed in other cases, Morris Nichols endeavors to set the hourly rates for its

attorneys and paraprofessionals at levels equal to (or even below) those of its principal competitor firms.

**C. The Committee's Selection of Proposed Counsel**

9. I and other members of the Committee were familiar with Morris Nichols prior to the Committee's decision to select Morris Nichols as counsel for the Committee. ACR initially engaged Morris Nichols in mid-May 2019 to represent ACR in connection with disputes arising out of, among other things, the alleged wrongful exclusion of ACR and all holders of Series A preferred stock issued by EPI, other than AB Elk Holdings LLC and AB Co-Invest Elk Holdings LLC (together, the "AB Parties"), from an exchange offer that EPI made to holders of its Series A preferred stock on or about February 12, 2019. Shortly thereafter, Fulcrum and LIM also engaged Morris Nichols. On May 20, 2019, Morris Nichols commenced an action against EPI, the AB Parties and others in the Delaware Court of Chancery, styled as *ACR Alpine Capital Research, LLC, et al. v. Elk Petroleum, Inc., et al.,* C.A. No 2019-0372-JRS (the "Chancery Action"). On May 22, 2019 (the "Petition Date"), EPI and the other Debtors commenced their respective bankruptcy cases by filing voluntary bankruptcy petitions in this Court. I am informed that EPI's bankruptcy filing resulted in some, but not necessarily all, aspects of the Chancery Action being stayed.

10. From the Petition Date through and including June 18, 2019, Morris Nichols continued to represent LIM, Fulcrum and ACR, as holders of the Series A preferred stock issued by EPI, in connection with the Debtors' chapter 11 cases, including their efforts to seek the appointment of a statutory committee of preferred equity security holders.

11. On June 20, 2019, one day after the appointment of the Committee, the Committee convened a telephonic meeting to, among other things, consider the retention of

counsel. Prior to selecting Morris Nichols as the Committee's proposed counsel, I and other members of the Committee were made aware that the Committee had the opportunity to consider other law firms for the role of proposed counsel for the Committee. However, given the pace of these chapter 11 cases, the institutional knowledge that Morris Nichols has already developed through its representation of LIM, Fulcrum and ACR in connection with these cases and the Chancery Action, and Morris Nichols' demonstrated experience and expertise in representing LIM, Fulcrum and ACR in such matters, it was the unanimous judgment of the Committee to retain Morris Nichols as proposed counsel for the Committee effective as of June 19, 2019, without taking the intermediate step of interviewing other law firms. In reaching this decision, we also considered Morris Nichols' prior history of representing committees, debtors, creditors, equity interest holders and other interested parties in chapter 11 cases and the anticipated attorney's fees to be billed in connection with these chapter 11 cases.

12. Since the appointment of the Committee on June 19, 2019, Morris Nichols has continued to provide certain limited legal services to LIM, Fulcrum and ACR in connection with the Chancery Action, which has been mostly idle since the Petition Date. ACR, LIM and Fulcrum are in the process of obtaining alternate counsel to represent them in the Chancery Action (if necessary). When we have completed the engagement of alternative counsel for the Chancery Action (if necessary), Morris Nichols will transition out of further representation of ACR, LIM and Fulcrum in their individual capacities in the Chancery Action until at least the conclusion of Morris Nichols' engagement on behalf of the Committee in these chapter 11 cases.

**D. Other Circumstances Warranting Retention of Morris Nichols**

13. I understand from Morris Nichols that its attorneys' billing rates are set each year by reference to various sources to ensure that the firm's rates are in line with the billing rates of

other comparably skilled professionals at law firms in Morris Nichols' peer group. Indeed, the Committee confirmed that (i) the Morris Nichols attorneys staffed to this engagement will not be charging a premium or in any way increasing their hourly rates over the fees charged to non-bankruptcy clients and (ii) the material terms for the engagement are comparable to terms of other comparably skilled professionals whom the Committee evaluated. To the extent there is any disparity, I nevertheless believe that Morris Nichols' retention by the Committee is warranted in these chapter 11 cases.

**E. Procedures Established to Supervise Fees and Expenses and Manage Costs**

14. I understand that estate professionals' fees and expenses will be subject to periodic review by the U.S. Trustee, the Debtors, and the Committee on monthly, interim, and final bases during the pendency of the chapter 11 cases. The Committee understands that Morris Nichols historically increases its hourly billing rates for its professionals and paraprofessionals on a yearly basis.

15. During these chapter 11 cases, the Committee will monitor Morris Nichols' invoices to ensure that the fees and expenses requested by Morris Nichols are reasonable in nature and reflect necessary or beneficial services rendered on behalf of the Committee. I understand that Morris Nichols is preparing a budget and staffing plan and will be presenting it to the Committee for approval. I understand that the Committee, if necessary, can object to any disputed fee statement. If the Committee so objects, Morris Nichols has agreed to file a Notice of Objection to Fee Statement on the Committee's behalf. In so doing, I understand Morris Nichols reserves all rights to contest any objection by the Committee, and the Committee can seek to retain conflict counsel to prosecute any fee objection to the extent the dispute cannot be resolved amicably by the parties.

16. Nothing contained in the foregoing is intended to limit Morris Nichols' ability to request allowance and payment of fees and expenses pursuant to 11 U.S.C. §§ 330 and 331, nor to restrict Morris Nichols' right to contest any objection raised to the allowance or payment of such fees, nor to restrict the Committee's right to retain conflicts counsel to prosecute any such fee objection to the extent it is not resolved amicably by the parties or raised by another party in interest (e.g., the U.S. Trustee).

**F. Other Matters**

17. I understand that Morris Nichols' hourly rates are subject to periodic adjustments. Morris Nichols has advised me that they will inform the Committee in advance of any such adjustments to their existing rate structure. In that event, I have been specifically advised by counsel that, pursuant to ABA Formal Ethics Opinion 11-458, "periodic, incremental increases in a lawyer's regular hourly billing rates are generally permissible if such practice is communicated clearly to and accepted by the client at the commencement of the client-lawyer relationship and any periodic increases are reasonable under the circumstances." I have also been specifically advised by counsel that, pursuant to ABA Formal Ethics Opinion 11-458, "the client need not agree to pay the modified fee to have the lawyer continue the representation." To the extent Morris Nichols seeks to make any such adjustment to its rate structure, the Committee expressly reserves the right to reject any such modification to the extent the Committee deems it unreasonable.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on July 16, 2019

*/s/ Mark Unferth*
Mark Unferth